All right. The first case on the docket this morning is 2-25-0078. The people of the state of Illinois plaintiff Abilene v. Daryl E. Holman, defendant of the felons. Arguing on behalf of the felons is Dominique Estes. Arguing on behalf of the Abilene is Diane L. Ennis. All right. Good morning, counsel. Our third panelist, Justice McClaren, is unable to attend this morning. He will, however, listen to the recording of today's arguments before deliberations. So with that, Ms. Estes, you may proceed when ready. Feel free to adjust the microphone as needed. I apologize if I cough at all, Your Honors. I'm getting over a cold. Good morning, Your Honors. Good morning, opposing counsel. May it please the Court. My name is Dominique Estes, and I represent the defendant in this case, Mr. Daryl Holman. Holman raises three issues that warrant a new trial. I plan to address all three. First, the trial court erred in admitting statements that Holman made after he had invoked his right to silence. Second, the court admitted other crimes' evidence without weighing its prejudicial effect, which substantially outweighed his prerogative value. And third, trial counsel tendered a jury instruction that stated the other crime's evidence was admissible for its propensity when it was not admissible for that purpose. On Issue 1, Holman was interrogated by police in September 2021. He was interrogated on three offenses. In the second portion of the interview, about 18 minutes in, Officer Hrabowski asked him about an alleged battery to a man named Wayne. During that portion of the interview, Holman said, I don't think I'd be talking to you about this. Hrabowski responded, okay, you don't want to say anything about that? And Holman responded, no. Hrabowski kept questioning. At one point, he told Holman, you beat him up. And Holman responded, I'm not even going to speak about that. Hrabowski asked, you're not going to talk about that? And Holman again said no. Hrabowski then moved on to ask about the sexual assault that is at issue in this appeal. He asked Holman if he knew where Wayne lived or had ever been in Wayne's apartment. At that point, Holman said, I don't even want to get involved in that. And on the second question, I'm not comfortable speaking about any of that. You just, you know, talked about his responses. Each response was he didn't want to talk about that. Yes, Your Honor. It's actually unequivocally invoked. Well, Your Honor, the Fifth Amendment. Or is that your position, that he unequivocally invoked? Yes, Your Honor. The Fifth Amendment is not offense-specific. And even when the defendant uses qualifying language, like saying, I don't want to talk about this or I don't want to talk about that, there's a difference between the defendant saying, I don't want to talk about the offense at all, which is what this court ruled was qualified as an invocation in the People v. Thrall case, versus the Lendlum case, where the defendant was questioned about a murder, and then briefly the police tried to question him about an unrelated offense, asking him if he had taken a child to church. The defendant didn't want to speak about that. He said something like, I don't want to speak about that. The police immediately moved on. Here, Holman repeatedly said, I don't want to talk about this. I don't want to speak about that. The reason that the Fifth Amendment isn't offense-specific is that, first, we need a bright-line rule for courts to apply. Second, we need a bright-line rule to govern police misconduct. It would not be fair if, say, police were interrogating a defendant on ten offenses, and the defendant repeatedly said for the first nine offenses, I don't talk about that. Don't want to speak about this. But then gets to the tenth offense and doesn't make those same invocations, doesn't make those same statements. He still invoked. He invoked at the start. That's what happened here. Holman, well, not at the start. He did speak for the first 18 minutes of the interview, but he is allowed to invoke his right to silence at any point, and that is what he did. He said, I'm not going to speak about that. Even if his invocation needed to be offense-specific, which there is no case law suggesting that, when he was asked about the sexual assault, Verowski asked, did you know where Wayne lived? Had you ever been in Wayne's apartment? Verowski specifically assured Holman that he was not talking about the battery to Wayne. He was talking about another offense. And Holman said, I don't even want to get involved in that. I'm not comfortable speaking about any of that. He shook his head. But then the defendant started to ask questions of Verowski, right? He wanted to know, what's the allegation? What am I being accused of? So when Holman said, I don't even – I guess initially he would ask, yes, did Holman know where he lived? And Holman was confused about the word use of past tense. He was confused why you're asking about where he lived. And Verowski clarified, at the time that you know him. And Holman said, I don't even want to get involved in that. Holman did not continue to offer information. He did not continue to speak. He only spoke when questioned. So he was invoking his right to silence. That is different from – I forget the case name. There was an appellate court case referenced in the briefing where the appellate said, I don't want to talk, but then immediately followed that statement by answering the officer's question. Here it's different. Holman said, I don't want to talk. And Verowski kept questioning him. Should a defendant's invocation of the right to silence be treated the same way as an invocation of counsel? As if to say – so if a defendant says, I want a lawyer, that's where everything ends, right? No matter what's being discussed. In that sense, yes, they are similar. Although the Sixth Amendment right to counsel is offense-specific in that only the offenses that the defendant is charged with he has the right to counsel. But, yes, in terms of the invocation, yes. Once the defendant invokes that right, that invocation must be honored. The police officer shouldn't be in the position where he is determining what the defendant wants to discuss and what the defendant doesn't want to discuss. It's a break-line rule. If the defendant says, I don't want to talk, that's the end of the interrogation. And we do not hear that Verowski clearly understood that Holman didn't want to speak. He said – Holman has a background. He's familiar with the criminal justice system. He has prior convictions, Your Honor, and – And it's apparent from his responses that he knew that he could limit what they were going to be talking about because he kept saying, I don't want to talk about that. I don't want to go there. The question is whether a reasonable officer in Verowski's position would have understood. And Verowski did clearly understand that Holman did not want to talk. But he also clearly understood that Holman had a background, right? I don't know if Verowski was familiar with Holman's criminal history. Is that a reasonable inference? Ordinarily, when you have a suspect in custody, you're going to run his record? Perhaps, Your Honor. But still, even if we were to say that Holman was only – – to talk about the second offense, the battery to Wayne, Verowski still kept bringing it up later in the interview. He asked Holman three specific questions trying to get into the incident with Wayne, asking where was Wayne in all of this. Did anything happen over by the liquor store? How did he get into Wayne's apartment? So he kept going back to the second offense, even if Holman clearly stated he didn't want to discuss it. But, again, there's just no case law to support the idea that the Fifth Amendment invocation is offense specific. I tried looking for those cases, Your Honors. I couldn't find any. Well, the State, you know, it's interesting. The State took the position, takes the position that for purposes of whether or not Holman invoked their separate incidents, but for purposes of introducing other crimes evidence, they allege that it's all one seamless continuing course of conduct, which is what the trial court ruled. Right, Your Honor. It's kind of a schizophrenic argument, right? Sorry, can you repeat that? It's kind of a schizophrenic argument. Yes, to some extent, Your Honor. And Verowski stated in the interview, you know, around the 30-minute mark, when he tries to ask more about how they were in the apartment, and Holman says, I don't want to talk about that. Verowski says, well, it all ties together. Obviously, you don't want to talk about Wayne, but it all ties together. I have to keep questioning about this because they're so interrelated, for the purposes of Verowski's investigation, at least. The State cannot prove that the error in admitting the interview at trial was harmless. Without the interview, the State would have needed to rely on J.W.'s testimony to establish all the fundamental facts underlying the offense, that they knew each other, that they were together in that time period, and that they had sex. And J.W.'s credibility was questionable. She had changed the date of the offense from her prior testimony. She was a heavy drinker, both in July 2021 and at the time of trial. And she made some bizarre testimony claiming that Holman's, claiming that immediately before the offense, Holman's eyes had rolled back into his head and he spoke in Hebrew. So because the case came so heavily down on J.W.'s testimony, and the State would have to rely on that without Holman's prior statements, the State can't prove that the error in admitting his statements after the indication was harmless. Moving on to Issue 2, the trial court abused its discretion in admitting the other crime's evidence. The trial court did not conduct the required balancing inquiry. Had the court done so, it would have realized that the evidence was substantially more prejudicial than probative, and that the State's proper reason for offering the evidence was pretextual, and the Court's ruling ultimately permitted a mini-trial on the prior crime. I do want to note, for your honors, I made a citation error, in the reply brief. On page 7 of the reply brief, at the bottom of the page, I cited to the Rosado decision. I actually meant to cite to People v. Boyd, which I'd cited in the opening brief at page 25, just so that doesn't cause any confusion. In Boyd, the court held that the trial court failed to exercise discretion where it made no mention of the prejudicial effect of the evidence when it was supposed to be conducting this balancing inquiry. Here, the trial court made the exact same error. The court merely stated that the evidence was relative to prove the victim's subsequent behavior and the defendant's course of conduct. At no point in time did the trial court use the words probative or prejudicial. And it's evident that the trial court really wasn't concerned about prejudice to the defendant. If anything, the trial court was concerned about some sort of prejudice to the State. The trial court mentioned that it didn't want to sanitize the State's facts. That's not the inquiry the trial court should have been engaged in. The concern is, what is the specific probative value of the evidence offered versus its prejudicial effect? Had the trial court conducted the proper inquiry, it would have realized that the evidence was not sufficiently probative for the offered purposes. The State had better evidence to explain why J.W. was too scared to report the crime. And that's the only reason the State offered the evidence, to counter the anticipated consent defense. The better evidence the State had at its disposal was J.W.'s testimony about the offense itself, where she claimed that Holman held a knife to her throat during the assault. And in J.W.'s testimony at trial, she only stated that the assault itself made her afraid of Holman. She never mentioned that the battery that she previously witnessed two days prior to another man had anything to do with why she didn't report the assault sooner. What are you requesting by way of relief here? That this be sent back for the probative versus prejudice weighing by the trial court, or that we do so? I wish you two... I suppose the appropriate relief would be a ruling that the evidence wasn't admissible. I guess I'm not sure exactly if the trial court needs to be allowed to make that determination first. I think there's enough evidence in the record that it's clear that the trial court's stated purpose was in fact pretextual, given the State's argument in closing that invoked propensity reasoning. Also, the State's questioning on assignment and cross-examination. Yes, Your Honor. The State admitted a significant amount of evidence at trial that was exclusively relevant to prove the prior crime. It was not relevant to the sexual assault whatsoever. In particular, the cross-examination of Holman was quite vigorous, conducted, went across multiple pages of Holman's testimony, and served no other purpose than to attack his narrative about the prior crime, which she only gave in response to all of the evidence that had been admitted prior. Even if the State needed to admit this evidence to prove why J.W. was afraid of Holman, they could have done so with the very brief sentence that J.W. gave near the beginning of her testimony. She said something like, we were outside, Holman ran up and punched this other man, and then we went to an apartment. That's all that the State needed to offer. Instead, they threw out her testimony. They offered the testimony of the landlord. The landlord didn't even know that they had been there. He had no knowledge. He didn't know Holman or J.W. His testimony was solely relevant to prove that a prior crime had occurred here. If this had not come up in the State's case in chief, it's possible the defendant could have opened the door, but what you're saying is that the defendant had to talk about it because it was already in? Yes, Your Honor. It's possible that Holman would have brought it up on his own, although it also seems unlikely. If his prior statements had been suppressed, he may not have chosen to testify at all. He certainly would not have been cross-examined to the extent he was about the prior crime if the State had not admitted it in this case in chief. I don't know that the State would have had any purpose to bring that up. Of course, if Holman had brought it up, then it would be a case of invited error. I want to give you a minute to address the jury instructions. Yes, Your Honor, very briefly. It's very clear that the jury instruction here was a grave error. The jury was supposed to get a stop sign, and they got a green light. Prejudice should be presumed. That's what this court held in the Johnson decision in 2015. And even if not presumed, typically we assume that jurors follow the instructions, and the evidence against Holman was not overwhelming based on everything I discussed in regards to Issue 1 with J.W.'s credibility. And for those reasons, I think it's very clear on Issue 3 in particular that this court should be ready for a new trial. All right, thank you, Counsel. You will have time in rebuttal. Ms. Campbell, when you're ready, please proceed. Good morning, Your Honors, Counsel. I'm Diane Campbell. I'm representing the people of the State of Illinois today. I'm going to briefly address the jury instruction issue. In my brief, I argue that it is an invited error. It is defense instruction number one. In Jones and in Petrie, in my brief at page 37 and 38, a party can't complain of an error on appeal which that party induced the court to make or to which that party consented. But, Counsel, does that apply in ineffective assistance cases? I'm working there. Invited error precludes plain error. That is Quisada, which is Illinois Supreme Court. In LeGrone, it does say it doesn't apply in the ineffective assistance of counsel claims. In that case, we have the Strickland standard, and defendant cannot meet the second problem of Strickland, which is prejudice. In this case, the jury found the defendant guilty of the aggravated sexual assault with bodily harm. It found him not guilty of the aggravated battery with a knife. So if this instruction had been so overwhelmingly misleading for the jury, they would have found the defendant guilty of the aggravated criminal sexual assault with a knife, particularly given the fact that he had the ASA actually argued that the defendant's two prior convictions, the armed violence and the felony theft, can be considered as regards his credibility. So that at least was put forth, and that restriction was put up. But it's also argument, and the jury specifically instructed not to treat arguments as evidence, and that was not an instruction from the court. It was an offhand phrase thrown into the closing. So that still does not alleviate the fact that they found him not guilty of the aggravated criminal sexual assault with a knife. Does that mean anything? The jury may have believed that he was armed, but they were already finding him guilty of aggravated criminal sexual assault based upon bodily harm. I was looking at the version. That's up to the jury, even if they believe he was armed. I was reading through the closing arguments, and one of the points that defense counsel made, which would militate against him being ineffective, is that there was no knife found. And in this case, the jury had all the pictures of the victim's very graphic wounds, the forehead wounds. She gave graphic testimony. The trial jury judge at sentencing noted her graphic testimony concerning her wounds. So I think that this definitely is not prejudicial to have had. And, again, that's one of the four, you know, situations. She was also a heavy drinker, an alcoholic, a drug user. As was the defendant. Right. So, you know, in the closing argument, the state actually went into and argued propensity. I don't believe they did, if you're referring to. The prosecutor argued that we know that the defendant, when he wants something, he takes it. He's willing to take keys from a passed out man and stay in his place. How is that not an argument that he's a propensity for violence? In the context of the situation, the prosecutor makes repeated remarks about the actual circumstances of offense. And the biggest one is that he hit her. He threatened her with the knife. He violently sexual assaulted her. When she tried to raise her head up, he slammed her head down again. So the force is in relation to his sexual assault on the victim. It doesn't parlay into a sort of general. Well, it isn't saying we know that the defendant, when he wants something, he takes it. That's a general character thing. It's an argument about his character. That's who he is. That is his actions in the sexual assault. It said that the victim testified that he demanded sex. He would not take no. He ordered her to take off her clothes. He violently, very violently assaulted. You know, ran her head on the ground. She had bruises on her back. Which he also did to Wayne and took his key. And isn't that all part of that argument? It is part, but in this case it is part of the continuing narrative. Hold on a second, let me find that. In Rutledge, which I cite in my brief on page 30, other price evidence is properly admitted where otherwise there's no explanation for the defendant's subsequent conduct without that evidence. And when the crime is inextricably intertwined. There's a delay of a day, possibly two, between the assault on Wayne and the assault on JW. Correct. I have a hard time conceiving of any necessity to prove the sexual assault of having the battery to Wayne in there at all. It explains why the victim is so afraid. It's part of it, it's not entirely. The victim can testify to that based on the conduct in the apartment. And if the defendant got on the stand and testified that she wasn't afraid, then that opens the door to potentially other things. He argued consent. So in that case, defendant is going to, this goes into my prison counsel's argument that it should have been kept out. But with a consent defense, the defendant is either going to have to testify himself or he's going to have to have the statements come in. And the trial judge's concern when she, when my prison counsel mentioned the trial court said they did not want to sanitize the people's evidence, that's at 351. The sentence just before that is defense counsel in the motion arguing that the evidence is prejudicial and irrelevant. There's no way in the context of that that the judge was not considering the defense argument that it was both prejudiced and irrelevant. So I certainly agree that this is, and the judge actually articulated that this explains why she was so afraid. So you can't separate out one fact. It's a whole package. Defendant himself testified that he had beat up three Mexican men. And that was how he explained how the victim got the bruise on her elbow. He said he grabbed her to haul her out. And she said he hit her because she wasn't moving fast enough. So this is the continuing narrative of what happened. And that happens when defendant, as according to J.W., hunches away a man and takes his keys. The defendant knew Wayne. The victim did not know Wayne. So in SMART, that is where the court said that they didn't want to sanitize. That's in my prison counsel's reply brief at 6. In OUTLAW, other crimes evidence, if part of the continuing narrative of the events giving rise to the offense, is intertwined with the events charged or explains aspects of the crime charged that would otherwise be implausible. Defense counsel repeatedly argued that it had to be a consensual encounter because the victim did not leave immediately. And that she did not immediately report it to Sullivan. When they got out of the apartment and they saw Sullivan. But the defendant was still present when Sullivan was there. She reveals what actually happens to her friend when she gets safely away from the defendant. In Johnson, which in that case, oh, and in some of the cases, I think in one of the primary ones, the only offense the defendant was being questioned about was the murder of the victim. There weren't segmented fragments, which we found here. And that is what the judge ruled on here. Her full text, I think, is on page 7 of my brief, so I won't go into that. But she very carefully divided. She noted the defendant had given his Mirandas at the beginning. He answered all the questions about the other victim, which was an aggravated battery, I believe. Yes, aggravated battery. As Justice Burkett pointed out, when the defendant was saying he didn't want to talk about the Wayne incident, it was always this, didn't want to talk about this, didn't want to talk about that. It was specifically he didn't want to talk about Wayne. Regarding Wayne's apartment, the battery to Wayne did not happen in the apartment. The sexual assault of the victim occurred there. They had lived together previously in the tent city. That was a public forum. Here, the defendant has the victim isolated in an apartment. He told her to be quiet if anyone knocks on the door because they're not supposed to be there. That also indicates why she didn't make outcries or try to escape. He wouldn't even let her go out to go to the bathroom. I'm going to briefly hit the jury instructions a little bit more. While we're still on that, doesn't all of this evidence you're citing underscore the surplus nature to the other crimes evidence, that it wasn't necessary for that purpose? The state does not know what the jury is going to believe. It is going into, everyone admits it, a credibility contest mainly between the defendant and the victim. The state does not know how the jury is going to perceive either of those witnesses' testimony. It will put in all the evidence that it can muster. In this case, then, doesn't the propensity instruction being backwards amplify that potentiality? Not in this case because the jury found he was not guilty of the, it's the same sexual assault. Regardless of that argument, there's a long line of cases that say, that suggest that the state, even when other crimes evidence is admissible, there should not be a mini-trial on the other crime. Well, I'm sorry to mention this, but this is not a Calderon case. This is the one, the one victim, she was present at both incidents. This is the same defendant. This is not where we have 37, you know, multiple people coming in and saying the defendant beat them up. This is just Julie, just the defendant. Wayne comes in sort of incidentally in this because they have Wayne's keys. Defendant actually was the one that testified that he saw his buddy Wayne, who he had planned to spend the evening with because they were friends, passed out in the street. All he did was pick up Wayne's keys and go to Wayne's house without bothering to take him with him. He took Julie instead. It's entirely reasonable for the officer to, you know, ask who might else have heard Julie in the apartment to counter the defendant's argument that it was consensual, and why didn't she scream? Why didn't she run out? Why did she stay? That's all the defendant's theory. Well, I mean, if that comes as evidence, then there's rebuttal that could come in. That door is open at that point. But we're talking about the state's case in chief throwing all that in. In this case, my opposing counsel referred to it as an anticipated affirmative defense of consent. It was a declared evidence or a declared defense before trial. The state knows this is coming. They know it's the defense plan. They are taking a proactive. They're asking Julie questions to explain what she has done and why she has done it, what she has not done, and why she did not do it. She never testified that she, you know, followed the defendant's instructions because of what she saw. She... Inspector Wayne. Can I finish, though? Yes. Okay. Her testimony was that she saw the defendant hit this man. He took the man's keys, and then he grabbed her arm and hit her and dragged her along with him to the apartment. So it is, in fact, part of the continuing course of conduct. It explains what would otherwise be inexplicable, which is her fear and terror and why she didn't escape earlier, why she didn't explain to Detective Sullivan. And again, there has to be a clear invocation of the right to remain silent. And the requisite stand for that is the perspective of a reasonable officer. Obviously, the detective here thought that defendant was just speaking. He didn't want to talk about his battery of Wayne. So it's a separate, unrelated crime for purposes of invoking. But for purposes of other crimes evidence, it's a continuing course of conduct. And the defendant himself acknowledged at R846 to 847, he testified that at trial, he was volunteering answers, questions regarding the sexual assault, and that he knew he could refuse to talk to Detective Grabowski, but chose to talk to him anyway. That's the defendant's statement. How can you say it's not reasonable for the officer to believe that if the defendant himself believed it? He demonstrated it later when he asked to talk privately. Obviously knows he can stop the questioning. He can put conditions on it. He just said he did not want to talk about Wayne's battery. Thank you very much, counsel. Let me just ask this when you're ready to rebuttal. Starting with issue two, I'd like to point out opposing counsel is incorrect about a portion of GW's testimony. She did not testify that Holman hit her. She testified that he pulled her away. The state had in the pretrial hearing proffered that she would testify that he hit her, but she did not testify to that fact, nor did she testify that she was afraid of Holman as a result of the prior battery she witnessed. She only testified that she was afraid after the assault itself. Opposing counsel also argued that we can tell that any error on issues two or three is harmless because Holman was acquitted on the deadly weapon charge. I would note that the propensity issue is particularly strong as it relates to the bodily harm charge because the prior crime alleged that Holman walked up to a man, punched him in the head, and knocked him unconscious. And in the instant offense, it was alleged that Holman repeatedly bashed GW's head into the floor, the same kind of brute physical force used, not using a weapon. So the propensity issue is particularly relevant to the bodily harm charge on which he was convicted. It's also just nearly impossible to say that the error was harmless in admitting the other crime's evidence because of how extensive the evidence was and because we really don't know why the jury acquitted on the deadly weapon charge. I would offer to the court, I would be happy to offer a supplemental briefing on what the appropriate relief is on issue two, if the court finds that appropriate. Also, I will, on issue one, I note for the court, the Fifth Amendment is all or nothing. And what that means is that, you know, not only if Holman invokes on the second offense, that makes statements about the third offense inadmissible, but the inverse is also true. If this court finds that his statements were admissible in this case, they also would have had to have been admissible in the battery case because it's not offense specific. You invoke once and the interview is done. If this court finds that an invocation can carve out different offenses, that would be a novel journey in Fifth Amendment law. It's really not supported by any precedent from the Illinois Supreme Court, from any of the federal court decisions that I looked at, or the U.S. Supreme Court. The closest case seems to be the Langdon case where they carved out, there was this one little detail that the defendant indicated he didn't want to discuss that was not about the offense he was being interrogated on. So in that case, it wasn't an invocation, but here Holman repeatedly stated that he didn't want to talk about the battery to Wayne. And then when Berowski moved on to discuss the sexual assault, Holman again said he didn't want to discuss it. I would also note, regarding the state's, the prosecutor's argument in closing, specifically the state's language did go to propensity, not just that we know that he takes keys from a passed out man, but the state also went on to mention, do you think he has any hesitation in punishing her if she doesn't submit? So again, invoking the violent aspect of his prior conduct. While opposing counsel argues that invited error precludes plain error, it's clear that if there's a structural error in an ineffective assistance of counsel case, prejudice is presumed. There's no plain error here. It's ineffective assistance. Do you have any further questions, Your Honors? I thank you very much, Counsel. We appreciate the arguments of both sides. With that, we will consider the matter and issue a ruling in due course. And we will recess until our 1030 argument.